UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                                                              Chapter 13
Terry O. Ehiorobo,                                                                            Case No. 13-24713-svk
       Debtor.

**MEMORANDUM DECISION AND ORDER DENYING CONFIRMATION OF PLAN**

       On April 15, 2013, Terry Ehiorobo (the "Debtor") filed this Chapter 13 case. (Docket No. 1.) The Debtor filed his first proposed Chapter 13 plan on May 3, 2013 and a first amended plan on July 5, 2013. (Docket No. 9, 23). On July 30, 2013, The FDIC as Receiver for Banks of Wisconsin ("FDIC") objected to the confirmation of the Debtor's plan, alleging that the plan failed to comply with the equal payment provisions of § 1325(a)(5)(B)(iii)(I) and that the plan was not feasible. (Docket No. 30.) Judge Pamela Pepper held a hearing on FDIC's objection on August 20, 2013. At the hearing, the Court granted the Debtor's counsel's request to brief the issue of whether the Bankruptcy Code allowed a debtor to make a balloon payment. (Docket No. 37.) A delay ensued while FDIC transferred its claim. (Docket No. 38.) On May 2, 2014, the Debtor filed a second amended plan, and on July 18, 2014 the Debtor filed his third amended plan. (Docket No. 57, 68).

       The Debtor's plan proposes balloon payments on the claims of three secured creditors: Talmer Bank and Trust ("Talmer"), VFC Partners 27, LLC ("VFC"), and CRE ADC 2013 ("CRE" collectively the "secured creditors"). The balloon payments are contingent on the sale or refinancing of the underlying mortgaged property. (Docket No. 68 at 6.) Talmer's balloon payment will be made on or before the 59th month of the plan; and VFC's and CRE's balloon payments will be made on or before the 35th month of the plan. (*Id.*) In addition to the balloon payments, the Debtor will make monthly payments into an escrow account for each secured

1

creditor. (*Id.*) The Debtor cannot withdraw any amount from the escrow account until the secured creditor's balloon payment is made, but the Debtor can use all or part of the account to make the balloon payment to the creditor. (*Id.*) The secured creditors are prohibited from withdrawing any amount from the escrow account unless the Debtor defaults on the plan and the default is not cured within 14 days, the withdrawal is to pay a portion of the balloon payment when due, or the creditor accepts its treatment under the plan. (*Id.*)

Talmer and VFC objected to the plan. (Docket No. 71, 76.) On November 26, 2014, the case was reassigned from Judge Pepper. The Court held a hearing on confirmation of the plan on December 17, 2014. At the hearing, the Court concluded that the plan violated the "equal monthly payments" provision of 11 U.S.C. § 1325(a)(5)(B)(iii)(I) and could not be confirmed over the secured creditors' objections. The Court ordered the Debtor to either file a modified plan, convert the case to Chapter 11 (which does not contain an equal monthly payments requirement), or request that the Court issue a written decision. On January 16, 2015, the Debtor filed correspondence requesting a written decision. (Docket No. 88.) The issue is whether the Bankruptcy Code prohibits a Chapter 13 plan proposing a delayed balloon payment to a secured creditor while protecting the creditor with an escrow account. This Decision and Order constitutes the Court's findings of fact and conclusions of law.

ANALYSIS

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Confirmation of a plan is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L). In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that even though a proceeding (a counterclaim to a proof of claim) appeared on the list of core proceedings, the bankruptcy judge lacked constitutional authority to enter a final order. However, *Stern* recognized that the

bankruptcy court has constitutional authority over claims when "the action at issue stems from the bankruptcy itself," and the issue in this case certainly qualifies. *Stern*, 131 S. Ct. at 2618.

Chapter 13 offers two general alternatives for the treatment of secured creditors who do not accept the debtor's plan. The plan can propose to surrender the creditor's collateral in satisfaction of the secured claim. 11 U.S.C. § 1325(a)(5)(C). Or the plan can distribute "property" with a value, as of the effective date of the plan, of the allowed amount of the secured claim. 11 U.S.C. § 1325(a)(5)(B). Importantly, under subsection (B)(iii)(I), "if property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts."

The Debtor argues that his plan does not violate § 1325(a)(5)(B)(iii)(I), because the provision does not prohibit lump sum payments to secured creditors, as long as the value of the proposed distribution is at least as much as the allowed amount of the claim. (Docket No. 84 at 6.) The Debtor's argument hinges on the literal use of the word "payments" found in § 1325(a)(5)(B)(iii)(I), noting that a "payment" must be tendered and accepted by the creditor to reduce the debt that remains outstanding. (*Id.*) Instead, the Debtor's plan calls for escrowing funds, which do not qualify as "payments" under the Debtor's definition. (*Id.*)

The Court previously analyzed this issue in *In re Luckett*, No. 07-24706, 2007 Bankr. LEXIS 3638 (Bankr. E.D. Wis. Oct. 24, 2007). In that case, the debtors proposed to pay the secured creditor adequate protection payments, including interest, real estate tax escrow and hazard insurance, for the life of the plan, followed by a balloon payment between the 35th and 39th month after confirmation. The debtors in *Luckett* attempted to convince the Court that adequate protection payments followed by a balloon payment did not constitute "periodic

3

payments," and thus did not run afoul of the equal monthly payments requirement. The Court rejected the argument, explaining:

> The Debtors have focused on the word "if" in § 1325(a)(5)(B)(iii), suggesting that by stating that *if* the property is distributed in periodic payments, the payments must be equal, Congress is suggesting that there are alternatives to paying a secured claim in full other than with periodic payments. That may be true, but rather than Congress envisioning a proposal for 36 months of adequate protection and a balloon payment at the end of the plan, the Court interprets this provision to allow treatment in the form of one lump sum payment in the full amount of the claim on the effective date of the plan.

*Id.* at *6. The Court denied confirmation of the plan, observing that "[c]alling the property distributed on the claim 'adequate protection payments' does not change the fact that this is property distributed on the claim." *Id.* at *7. The Court concluded that the only option for balloon payments are those made on the effective date of the plan; to delay the balloon payment until the end of the plan renders the payment a "periodic payment" and violates the equal monthly payments provision. *See In re Cupolo*, No. 12-51633, 2013 Bankr. LEXIS 486, at *6 (Bankr. E.D. Ky. Feb. 5, 2013) ("[T]he Plan cannot be confirmed with a lump sum payment due after the effective date.")

As the Court explained in *Luckett*, courts considering the "equal monthly payments" requirement have overwhelmingly agreed that delayed balloon payments are prohibited unless the creditor consents. *In re Schultz*, 363 B.R. 902 (Bankr. E.D. Wis. 2007); *In re Lemieux*, 347 B.R. 460 (Bankr. D. Mass. 2006); *In re Wagner*, 342 B.R. 766 (Bankr. E.D. Tenn. 2006). Since *Luckett* was decided, additional courts have weighed in on the debate with the same result. *Hamilton v. Wells Fargo Bank, N.A. (In re Hamilton)*, 401 B.R. 539 (B.A.P. 1st Cir. 2009); *In re Holliday*, No. 11-62315-13, 2012 Bankr. LEXIS 650 (Bankr. D. Mont. Feb. 23, 2012); *In re Bollinger*, No. 10-62344, 2011 Bankr. LEXIS 3339 (Bankr. D. Or. Sept. 2, 2011); *In re Melillo*,

4

385 B.R. 476, 479 (Bankr. D. Mass. 2008). The Court's decision in *Luckett* has not been overruled and is often cited by courts on this issue.

The Debtor attempts to distinguish *Luckett* based on the different categorization of the funds. Here, the plan creates escrow accounts funded by monthly payments as additional collateral for the secured creditors; the escrow accounts will be distributed to the creditors if the Debtor defaults or along with the balloon payments. In *Luckett*, the debtors paid adequate protection payments to the creditor during the life of the plan. The Debtor's characterization of the escrowed funds as something other than a payment is reminiscent of the argument made in *In re Hamilton*, 401 B.R. at 543: "The Debtor argues that § 1325(a)(5)(B) does not apply because his plan did not provide for 'periodic payments.' The Debtor's argument is an invitation for the Panel to elevate form over substance by allowing the Debtor to sidestep statutory requirements by attaching a label to his plan payments other than the one that actually applies. We must decline the invitation." *See also In re Acosta*, No. 08-11411, 2009 WL 2849096, at *3 (Bankr. N.D. Cal. May 7, 2009) ("Their argument is that the interest payments are 'adequate protection payments' and not 'periodic payments.' The court declines their invitation to engage in this sophistry; payments are payments.").

Whether the money paid by the Debtor is called a payment, adequate protection, or escrow funds, the concept violates the purpose of the statutory provision. In response to creditor concerns, Congress completely overhauled § 1325(a)(5)(B) in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Pre-BAPCPA, it was fairly common for Chapter 13 plans to propose creative ways to "backload" or delay payments to creditors. In addition to balloon payments contingent on the sale or refinancing of the collateral, debtors offered "step" plans with ever-increasing payments or reduced payments during certain times of

5

year for debtors working seasonal jobs.  *See In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2007).  If there was consent to this treatment, there was no problem, but more often, creditors objected based on feasibility of the proposal or due to the risk involved with potentially depreciating collateral.  *Id.*; *see also In re Henning,* 420 B.R. 773, 790 (Bankr. W.D. Tenn. 2009) (noting that there is no way that a debtor can credibly show that a sale or refinance that cannot be done today will be feasible in four or five years).  Sometimes, the balloon payment was never paid, because the debtor would exercise the right to dismiss the case when the creditor demanded performance, and the debtor would refile bankruptcy with a new "backloaded" plan.  *See Acosta*, 2009 WL 2849096, at *3.  The equal payments provision was enacted in response to these concerns.  Therefore, absent creditor consent, a plan featuring a delayed balloon payment simply cannot be confirmed, regardless of whether the debtor makes monthly adequate protection payments or pays monthly amounts into an escrow account.  The Debtor's chosen vehicle to maneuver around the equal monthly payments requirement is only an updated version of the *Luckett* model.  The test-drive yields the same results.

## CONCLUSION AND ORDER

For these reasons, the Debtor's plan violates § 1325(a)(5)(B)(iii)(I) of the Bankruptcy Code and cannot be confirmed over the creditors' objections.

IT IS THEREFORE ORDERED:  confirmation of the Debtor's third amended plan is denied.

Dated: January 29, 2015

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge

6

Case 13-24713-svk    Doc 89    Filed 01/29/15    Page 6 of 6